UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY LEE HOUSTON,<br><br>    Petitioner,<br><br>    v.<br><br>F. FOULK,<br><br>    Respondent. | No. 2:13-cv-2306 JAM GGH P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on April 29, 2010 in the Sacramento County Superior Court on charges of first degree murder, discharge of a firearm at a vehicle, attempted murder, and attempted voluntary manslaughter. (CT. 379, 381.) He seeks federal habeas relief on the following grounds: (1) the trial court erred in refusing to instruct the jury concerning accomplice testimony; and (2) insufficient evidence to support the gang enhancements. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

1

> Defendant committed his crimes on three separate dates in about a six-week period in 2005.
>
> *February 17, 2005*
>
> There were gang tensions between gang members from the Manors in North Sacramento and the Del Paso Heights Bloods, defendant's gang. Three men from the Manors (Donald McCall, Joseph McCoy, and Randall Hudson) were "stunting," which means they were showing off by driving slowly with the doors open and playing music. Defendant shot at the car, killing McCall.
>
> Later that day, defendant went to Manuel Lutin's house and gave Lutin the gun he used to shoot at the men from the Manors to put in Lutin's safe. A couple of weeks later, defendant retrieved the gun from Lutin.
>
> *March 13, 2005*
>
> Defendant saw two men from the Manors (Donald Spivey and Clarence Daniels) in a car. Defendant fired five shots at the car, using the same gun he used to kill McCall. He returned the gun to Lutin.
>
> *March 31, 2005*
>
> Kenneth Bell, who defendant believed was a Crips gang member from Texas, intervened in a fight between Bell's female cousin and another female. Defendant, who was wearing red, was offended by the intervention because he wanted to videotape the fight. Defendant said, "[H]ome boy, you not doing nothing." But Bell persisted in taking his cousin away from the fight. Defendant pulled a gun from his pocket, pointing it at Bell. Seeing the gun, Bell told defendant that he had no problem with defendant. Bell went to his car, and, as Bell drove away, defendant fired two shots at the car.

(Res't's Ex. A; People v. Houston, 2013 WL 1175021, at *1 (Mar. 22, 2013)).

After petitioner's judgment of conviction was affirmed by the California Court of Appeal, he filed a petition for review in the California Supreme Court. (Resp't's Lod. Doc. 10.) The Supreme Court summarily denied that petition without comment or citation by order dated June 12, 2013. (Resp't's Lod. Doc. 11.)

DISCUSSION

I. AEDPA Standards

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was

3

1  unreasonable requires considering the rule's specificity.  The more general the rule, the more
2  leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the
3  stringency of this standard, which "stops short of imposing a complete bar of federal court
4  relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has
5  cautioned that "even a strong case for relief does not mean the state court's contrary conclusion
6  was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

7        The undersigned also finds that the same deference is paid to the factual determinations of
8  state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct
9  subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a
10 decision that was based on an unreasonable determination of the facts in light of the evidence
11 presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §
12 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the
13 factual error must be so apparent that "fairminded jurists" examining the same record could not
14 abide by the state court factual determination.  A petitioner must show clearly and convincingly
15 that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.
16 969, 974 (2006).

17       The habeas corpus petitioner bears the burden of demonstrating the objectively
18 unreasonable nature of the state court decision in light of controlling Supreme Court authority.
19 Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must
20 show that the state court's ruling on the claim being presented in federal court was so lacking in
21 justification that there was an error well understood and comprehended in existing law beyond
22 any possibility for fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  "Clearly
23 established" law is law that has been "squarely addressed" by the United States Supreme Court.
24 Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008).  Thus, extrapolations of
25 settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.
26 Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state
27 sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear
28 prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

4

1  established law when spectators' conduct is the alleged cause of bias injection).  The established
2  Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other
3  controlling federal law, as opposed to a pronouncement of statutes or rules binding only on
4  federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

5       The state courts need not have cited to federal authority, or even have indicated
6  awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S. Ct.
7  at 365.  However, where the state courts have not addressed the constitutional issue in dispute in
8  any reasoned opinion, just simply denied it, the federal court will independently review the record
9  in adjudication of that issue.  "Independent review of the record is not de novo review of the
10 constitutional issue, but rather, the only method by which we can determine whether a silent state
11 court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.
12 2003).

13      Finally, a state court decision on a petitioner's claims rejects some claims but does not
14 expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that
15 the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___, 133 S. Ct.
16 1088, 1091 (2013).  However, if the state courts have not adjudicated the merits of the federal
17 issue, no AEDPA deference is given; the issue is reviewed *de novo* under general principles of
18 federal law.  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).
19 II. Accomplice Instruction

20      Petitioner's first claim is that the trial court erred in refusing to instruct the jury in regard
21 to counts one through six, as requested by the defense, "concerning accomplice testimony,
22 because the prosecution's chief witness could have been prosecuted for the crimes linked to the
23 gun found at his house, and the witness's testimony was not sufficiently corroborated."  Petitioner
24 argues that the trial court's failure to give an accomplice instruction violated his federal due
25 process right to a fair trial.  Petitioner contends that the error was not harmless in that there was
26 insufficient evidence besides Lutin's testimony to connect petitioner to the crimes committed on
27 February 17 and March 13.
28 /////

A.  <u>Applicable Legal Principles</u>

In general, a challenge to jury instructions does not state a federal constitutional claim. <u>Estelle v. McGuire</u>, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991); <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973).  Also, "[a]n appraisal of the significance of an error in the instructions to the jury requires a comparison of the instructions which were actually given with those that should have been given." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, (1977).  Where such error is the failure to give an instruction, the burden on petitioner is "especially heavy" because "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law." <u>Id</u>. at 155; <u>see also</u> <u>Cummings v. Adams</u>, 172 Fed. Appx 188, 189 (9th Cir.2006).  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'" <u>Prantil v. State of Cal.</u>, 843 F.2d 314, 317 (9th Cir. 1988) (quoting <u>Darnell v. Swinney</u>, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" <u>Id.</u> (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th Cir. 1984)).

The issue in this case, an alleged failure to give an accomplice instruction, does not implicate the law -- that a defendant is entitled to an instruction on a theory of the defense if there is any substantial evidence which supports the defense.[1]  In this case, a defense theory is not at issue.  Petitioner does not absurdly claim as a "defense" that Lutin, see below, was an accomplice to petitioner's commission of a murder; rather he claims he was entitled to certain *procedural*

---

[1] If evidence exists upon which a reasonable juror could find for petitioner, it is constitutional error not to instruct on that defense if requested by the defense. <u>Beardslee v. Woodford</u>, 358 F.3d 560, 577–78 (9th Cir.2002); <u>Bradley v. Duncan</u>, 315 F.3d 1091, 1099 (9th Cir.2002). In cases governed by AEDPA, such a violation is not actionable unless it caused substantial prejudice. <u>Id</u>. See <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993).

6

*protections* (corroboration and distrust instructions) to ward off Lutin's testimony since Lutin was an accomplice. The situation here is nothing more than an ordinary failure to give a procedural instruction.

      B. <u>Accomplice Instruction Analysis</u>

On appeal, petitioner argued that the trial court erred in refusing to give jury instructions relating to accomplice liability because there was sufficient evidence for the jury to conclude that "Lutin was 'liable to prosecution for the identical offense charged against' appellant, as a result of the discovery of the murder weapon in his house, thereby making him an accomplice." (ECF No. 1 at 16.) Petitioner argued that the court's finding that his fingerprint on the gun was sufficient corroboration for Lutin's testimony was incorrect in that it proved only that petitioner had once touched the gun, not that he had ever fired it. Petitioner's theory appears to have been Lutin had the gun and the ammunition and there was solid evidence against him. Although there were three witnesses who identified petitioner as the shooter in the March 31 incident, in contrast there were no eyewitnesses to the February 17 shooting, although Lutin testified that petitioner incriminated himself to Lutin in regard to that shooting. (<u>Id.</u> at 18, RT. 333, 335-37.) Lutin was the only witness who testified being present at the March 13 shooting. (<u>Id.</u> at 18, RT. 327, 343.) Petitioner argues that in addition to having been warned by police that he could be "wrapped up in" a prosecution for crimes linked to the gun found in his house, Lutin could have been prosecuted for the February 17 and March 13 crimes as charged in counts one through six. (<u>Id.</u>) The petition sets forth the evidence supporting his argument in this regard as follows:

> Police searched Lutin's house on April 7, seven weeks after the fatal shooting of Donald McCall, and found a .45 caliber gun and magazine loaded with eight bullets in a shoebox in Lutin's bedroom closet. (2 RT 352-353, 487-489, 555.) In a safe, police found two boxes of .45 caliber ammunition. (2 RT 490, 555.) A firearms expert determined that the gun was the gun that fired the casings and bullet found at the scene of McCall's fatal shooting on February 17, as well as the casings found at the scene of the nonfatal shooting at the community center on March 13. (3 RT 609.) However, the bullet found in Kenneth Bell's car after the shooting near the elementary school on March 31 was determined to be a .38 caliber bullet that could not have been fired by a .45 caliber gun. (3 RT 609.)
>
> Thus the gun used in the February 17 and March 13, 2005

> shootings was found in Lutin's possession in his bedroom, although Lutin claimed that he was only keeping the gun there at appellant's request.  (2 RT 337-338, 348, 355, 389, 391.)

(ECF No. 1 at 18-19.)

The state court record reflects that during the jury instruction conference, petitioner's counsel suggested giving CALCRIM No. 334, the jury instruction on accomplice liability, arguing that Lutin knew specific details about what took place at the shootings and therefore he must have been there, even though he may not have shot the gun.  After hearing the defense theory, the court declined to give the instruction because the defense could point to no evidence showing that Lutin knew these details from his own experience rather than having been told them by petitioner.  As the only evidence against Lutin was his possession of the gun after the crime, the court found at most that he could only have been an accessory after the fact and not an accomplice.  (RT. 655-58.)

On appeal, petitioner asserted that the prosecutor relied on Lutin's testimony regarding the February 17 and March 13, 2005 crimes.  The prosecutor argued to the jury in regard to the February 17 shooting:  "The person who tells you who was in the car and who was shooting is Manuel Lutin."  With respect to the March 13 shooting, the prosecutor argued, "Mr. Lutin says that the car starts shooting first, that that [sic] car starts shooting, at that point in time is when Mr. Houston takes out that .45 and starts blasting back at the car."  (ECF No. 1 at 20.)

California law provides that accomplice testimony alone is insufficient for conviction. Cal. Penal Code § 1111.  CALCRIM 334 requires that accomplice testimony be corroborated. According to this instruction, before the testimony of an asserted accomplice can be considered as evidence against the accused, the jury must decide whether the witness was an accomplice to the crime.  An accomplice is defined "as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."  Cal. Penal Code § 1111.  Being "subject to prosecution" requires that the witness either personally committed the crime, or knew of the criminal purpose of the person who did commit the crime, and intended to and did, in fact, aid, facilitate, promote, encourage or instigate the commission of the crime, or participate in a criminal conspiracy to commit the crime.  See People

8

v. Carrington, 47 Cal. 4th 145, 190-191, 97 Cal. Rptr. 3d 117 (2009).

Pursuant to California law, a trial court must sua sponte give jury instructions on the pertinent principles of law regarding accomplice testimony "'whenever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice.'" People v. Bevins, 54 Cal.2d 71, 76, 4 Cal.Rptr. 504 (1960) (quoting People v. Warren, 16 Cal.2d 103, 118, 104 P.2d 1024 (1940)). An accomplice includes "all persons concerned in the commission of the offense, whether they directly commit the act constituting the offense or aid and abet in its commission." People v. Scofield, 17 Cal.App.3d 1018, 1026, 95 Cal.Rptr. 405 (1971). Evidence is sufficient to support jury instructions relating to accomplice liability if the jury could reasonably conclude that a witness implicating the defendant is an accomplice. People v. Gordon, 10 Cal.3d 460, 470, 110 Cal.Rptr. 906 (1973). The relevant instructions inform the jury that the testimony of the accomplice witness is to be viewed with distrust and that the defendant cannot be convicted on the basis of the accomplice's testimony unless it is corroborated by other evidence which connects the defendant with the commission of the offense. People v. Rodrigues, 8 Cal.4th 1060, 1133, 36 Cal.Rptr.2d 235 (1994). See also CALJIC Nos. 3.11 (testimony of accomplice must be corroborated); 3.13 (one accomplice may not corroborate another); and 3.18 (testimony of accomplice to be viewed with caution).

The California Court of Appeal concluded that a failure of this sort did not implicate federal rights, and furthermore that any error was harmless because there was separate evidence that corroborated Lutin's testimony. The appellate court reasoned as follows:

> Defendant contends that the trial court erred by failing to give the jury CALCRIM No. 334, which informs the jury that testimony of an accomplice must be corroborated, because Manuel Lutin was an accomplice. He also contends that the error violated his federal due process rights. We conclude that any error was harmless because there was evidence that corroborated Lutin's testimony. Also, failing to give an accomplice testimony instruction does not implicate federal rights.
>
> Penal Code section 1111 defines an accomplice "as one who is liable to prosecution for the identical offense charged against the defendant...." The section further provides: "A conviction cannot be had upon the testimony of an accomplice unless it can be

9

corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

"'"[W]henever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice,"' the trial court must instruct the jury, sua sponte, to determine whether the witness was an accomplice. [Citation.] If the testimony establishes that the witness was an accomplice as a matter of law, the jury must be so instructed. [Citation.] In either case, the trial court also must instruct the jury, sua sponte, '(1) that the testimony of the accomplice witness is to be viewed with distrust [citations], and (2) that the defendant cannot be convicted on the basis of the accomplice's testimony unless it is corroborated....' [Citation.]" (People v. Zapien (1993) 4 Cal.4th 929, 982.)

"Whether a person is an accomplice within the meaning of [Penal Code] section 1111 presents a factual question for the jury 'unless the evidence permits only a single inference.' [Citation.] Thus, a court can decide as a matter of law whether a witness is or is not an accomplice only when the facts regarding the witness's criminal culpability are 'clear and undisputed.' [Citations.]" (People v. Williams (1997) 16 Cal.4th 635, 679.)

"A trial court's error in instructing on accomplice liability under [Penal Code] section 1111 is harmless if the record contains 'sufficient corroborating evidence.' [Citation.] Corroborating evidence may be slight, entirely circumstantial, and entitled to little consideration when standing alone. [Citations.] It need not be sufficient to establish every element of the charged offense or to establish the precise facts to which the accomplice testified. [Citations.] It is 'sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' [Citation.]" (People v. Valdez (2012) 55 Cal.4th 82, 147–148.)

"[T]he requirement under [Penal Code section] 1111 that 'a conviction cannot be had upon the testimony of an accomplice unless it be corroborated' is a matter of state law, which does not implicate a federal constitutional right. [Citations.]" (Barco v. Tilton (C.D.Cal.2010) 694 F.Supp.2d 1122, 1136.)

Here, we need not determine whether Lutin was an accomplice because there was other evidence connecting defendant to the crimes.

As to the February 17 and March 13 crimes, defendant's fingerprint was found on the gun used to commit those crimes. As to the March 31 crimes, the victim, Kenneth Bell, identified defendant. Therefore, Lutin's testimony was corroborated as to every crime, and any error in not giving the accomplice testimony instruction was harmless.

Answer, Ex. A, 2013 WL 1175021 at *2-3.

Petitioner cannot fault the trial court under federal law for not giving an accomplice instruction. One does not have a federal due process right to a cautionary accomplice instruction. It is elementary to federal habeas corpus jurisprudence that relief will not lie for alleged errors of state law in conducting a trial. Estelle, 502 U.S. at 71-72. Only if the alleged state law error encompasses an established federal right of fundamental importance can relief be given. Id. Federal law does not require evidence beyond that given by an accomplice to sustain a conviction. United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir.1993). See also United States v. Fritts, 505 F.2d 168 (9th Cir.1974). It follows, therefore, that a conviction obtained in state court primarily or only on accomplice testimony cannot be challenged as a "federal error." It further follows that a cautionary instruction regarding an accomplice's testimony cannot be a fundamental due process requirement. Fritts, 505 F.2d at 169. See also Barco v. Tilton, 694 F. Supp. 2d 1122, 1136 (C.D. Cal. 2010) (accomplice instruction in state criminal case is strictly a matter of state law). Under federal law, the fact that testimony may have been given by an untrustworthy witness or that it was contradicted does not make the testimony itself untrustworthy. United States v. Lopez, 803 F.2d 969, 973 (9th Cir. 1996). Therefore, because a federal court may not issue the writ of habeas corpus on the basis of a perceived error of state law, the question of whether Lutin was an accomplice to the murder and other crimes, as that term is defined by state law, is not cognizable in this habeas corpus proceeding.

In any event, this court concludes that the trial court's failure to give an instruction informing the jury that the Lutin's testimony should be viewed with caution because he was a potential "accomplice" in the murder and shootings did not render petitioner's trial fundamentally unfair. Petitioner's contention that Lutin was responsible for the crimes is not based on any evidence in the record other than the gun having been found in Lutin's bedroom and Lutin's own testimony of details of the crimes, despite Lutin's testimony that he was present only for the March 13th crime, but not for the two other shootings. As explained by the California Court of

/////

/////

1  Appeal, petitioner's fingerprint was found on the gun used to commit the February 17 and March
2  13 crimes. The victim of the March 31 crimes, Kenneth Bell, identified petitioner as the shooter.[2]
3  Although it is true that there were no eyewitnesses to the February 17th crime,[3] petitioner's
4  fingerprint on the gun (and not Lutin's, see below) was sufficient (enough) for the jury to find it
5  believable that petitioner committed this crime. In regard to the March 13th shooting, Lutin
6  testified that he was at the basketball courts with petitioner, knew that petitioner had his gun there
7  and heard petitioner fire off five shots as Lutin was standing about ten feet away from him when
8  it happened. (RT. 339, 342-43.) In fact, petitioner had gone to Lutin's house to retrieve the gun
9  from Lutin's safe before they went to the basketball courts together. (RT. 343.) The reason they
10 went to the basketball courts was so Lutin could recover his strength in his arms by playing
11 basketball, and the plan was that petitioner would watch him. (Id. at 339.) There was no
12 testimony by Lutin indicating he was in any way aware of petitioner's intentions with respect to
13 the gun. (Id. at 343-48.) Lutin's fingerprints were not found on the gun. (RT. 537-38.) Lutin's
14 admission to maintaining the gun at his house after the crimes in all likelihood prompted the jury
15 to view his testimony with some caution in any event. An additional instruction to that effect was
16 not necessary. Considering the record as a whole, the lack of jury instruction with respect to
17 accomplice testimony did not render petitioner's trial fundamentally unfair.

18  III. Sufficient Evidence to Support Gang Enhancements

19       Petitioner's third ground for relief is that the evidence was insufficient to support the gang
20 enhancements for counts seven and eight, the attempted murder of Kenneth Bell on March 31,
21 2005, and the shooting at an occupied vehicle on that date. He contends that the prosecution,
22 through its gang expert, Brian Bell, failed to establish the requirement for a gang enhancement
23 pursuant to Cal. Penal Code § 186.22(b)(1), that petitioner committed these crimes "for the
24 benefit of, at the direction of, or in association with" a gang, and that they were committed "with

---

[2] Lutin was not present for the crime involving the girls' fight on March 31st. (RT. 348.) Lutin testified that petitioner did not show him any gun or give him a gun on that occasion. (Id. at 352.)

[3] Lutin testified that he was not present at the February 17th shooting as he was home on bed rest. (RT. 327.) There was no testimony that he was aware that petitioner had any plan to use the gun. (Id., RT. 336-38.)

the specific intent to promote, further, or assist in any criminal conduct by gang members."

The California Court of Appeal rejected the argument that evidence of gang relatedness was lacking, as set forth in the following portion of the opinion:

> Defendant contends that there was insufficient evidence to support the gang enhancement to the crimes committed on March 31 because the evidence did not show that he committed the crimes for the benefit of the gang or that he intended to promote, further, or assist criminal conduct by gang members. He also contends that his conviction on insufficient evidence violated his due process rights. We disagree.
>
> "'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' ([People v.] Rowland [ (1992) ] 4 Cal.4th [238,] 269....) We apply an identical standard under the California Constitution. (Ibid.) 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' (People v. Johnson (1980) 26 Cal.3d 557, 576.)" (People v. Young (2005) 34 Cal.4th 1149, 1175, italics omitted.) In reviewing the sufficiency of the evidence, "a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (Id. at p. 1181.) We will reverse for insufficient evidence only if ' " ' "upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " ' (People v. Manriquez (2005) 37 Cal.4th 547, 577.)
>
> Establishing the gang enhancement requires a two-part showing. (People v. Villalobos (2006) 145 Cal.App.4th 310, 322.) The prosecution must establish the underlying crime was "[1] committed for the benefit of, at the direction of, or in association with any criminal street gang, [2] with the specific intent to promote, further, or assist in any criminal conduct by gang members...." (Pen.Code, § 186.22, subd. (b)(1).)
>
> Defendant asserts: "The only reasonable inference from the evidence is that [defendant] committed the shooting because he felt personally disrespected by the efforts by Kenneth Bell and his associates to stop a fight that [defendant] wanted to record with a video camera." To the contrary, viewing the evidence in the light most favorable to the verdict, there was ample evidence to establish the elements of the gang enhancement.
>
> Officer Brian Bell testified as an expert on gangs. He testified that gang members commit violent crimes to gain respect. They also

13

> commit these crimes to strike fear in others, thus dissuading them from testifying against gang members. Officer Bell testified, speaking of gang members: "If you are disrespected by a rival gang member ..., you're expected to somehow challenge that act of disrespect. And it's normally by committing some kind of violence against the rival gang member for disrespecting you. If you don't retaliate based on that act of disrespect, then you're going to be seen as weak within the image of your own gang."
>
> Given a hypothetical with the same facts as the March 31 crimes, Officer Bell gave his opinion that a Bloods gang member dressed in red, as was defendant, would feel disrespected by a known Crips gang member interfering in the attempt to film a fight and would feel the duty to react violently in order to avenge the slight by a rival gang member. This expert opinion, therefore, established inferentially that defendant committed the crimes for the benefit of his gang and that defendant intended to promote his gang in doing so.
>
> Defendant's argument fails to draw the inference in the light most favorable to the verdict. It is by that incorrect standard that he can conclude that he acted only out of feeling personally disrespected. Accordingly, because the evidence was sufficient to establish the elements of the gang enhancement for the March 31 crimes, defendant's contention is without merit.

2013 WL 1175021, at *3-4.

    A. <u>Legal Standards</u>

        1. <u>Sufficiency of the Evidence</u>

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. <u>U.S. v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir.2010) (en banc). First, the court considers the evidence at trial in the light most favorable to the prosecution. <u>Id.</u>, citing <u>Jackson</u>, 443 U.S. at 319, 99 S. Ct. 2781, 61 L.Ed.2d 560. "'[W]hen faced with a record of historical facts that supports conflicting inferences," a reviewing court 'must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" <u>Id.</u>, quoting

Jackson, 443 U.S. at 326, 99 S. Ct. 2781, 61 L.Ed.2d 560.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  Id., quoting Jackson, 443 U.S. at 319, 99 S. Ct. 2781, 61 L.Ed.2d 560.  "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt."  Id.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

### 2. Cal. Penal Code §186.22

The gang enhancement, California Penal Code § 186.22(b)(1), applies to "any person who is convicted of a felony committed [1] for the benefit of, at the direction of, or in association with any criminal street gang, [2] with the specific intent to promote, further, or assist in any criminal conduct by gang members ...."[4]  The prosecution must prove both prongs of this statute beyond a reasonable doubt.  Emery v. Clark, 643 F.3d 1210, 1214 (9th Cir. 2011).  As "[n]ot every crime committed by gang members is related to a gang," the first prong ensures that the crime is gang related.  People v. Albillar, 51 Cal.4th 47, 60, 119 Cal.Rptr.3d 415 (2010).  The second prong,

---

[4] A "criminal street gang" is defined in the statute as:

> any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.

Id., § 186.22(f).

1  which is the scienter requirement, "i.e., 'the specific intent to promote, further, or assist in any
2  criminal conduct by gang members'—is unambiguous and applies to *any* criminal conduct,
3  without a further requirement that the conduct be 'apart from' the criminal conduct underlying the
4  offense of conviction sought to be enhanced." Albillar , 51 Cal.4th at 66, 119 Cal.Rptr.3d 415
5  (emphasis in original). "There is no further requirement that the defendant act with the specific
6  intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote,
7  further, or assist criminal conduct by *gang members*." Id. at 67 (emphasis in original). Specific
8  intent applies to any criminal conduct. Again, it is not necessary that the conduct be "'apart from'
9  the criminal conduct underlying the offense of conviction sought to be enhanced." Emery, 643
10 F.3d at 1215 (citing standard set forth by the California Supreme Court in Albillar).[5]
11       In general, the prosecution may prove the elements of the gang enhancement by expert
12 testimony. Jones v. Montgomery, 2014 WL 773324, *11 (C.D. Cal.) (Feb. 20, 2014). Sufficient
13 proof of a gang's primary activities, such as evidence that its members "consistently and
14 repeatedly have committed criminal activity listed in the gang statute," may be in the form of
15 expert testimony. Id. "In addition, the testimony of a single witness is sufficient to uphold a
16 conviction." Roberts v. Virga, 2014 WL 657572 at *24 (C.D. Cal. Feb. 19, 2014).
17       B. Analysis
18       Viewing the evidence in the light most favorable to the prosecution, and with the
19 understanding that the appellate court conclusion of sufficiency must be AEDPA unreasonable in
20 order to grant a petition based on insufficiency, the undersigned concludes that there was
21 sufficient, albeit scant, evidence from which a rational trier of fact could have found beyond a

---

[5] In citing Albillar which had addressed the conflict between the Ninth Circuit's interpretation of § 186.22(b)(1) and state authority on the issue of whether the defendant must have the specific intent to assist in gang members' criminal activities separate from the charged crime, Emery noted that the California Supreme Court had resolved the issue, and held that the intent can apply to any criminal conduct, and was not required to be separate from the underlying crime. Id. at 1215. The Ninth Circuit acknowledged that accordingly the California Supreme Court in Albillar had overruled prior Ninth Circuit authority's interpretation of § 186.22(b)(1), found in Briceno v. Scribner, 555 F.3d 1069, 1078-83 (9th Cir. 2009), and Garcia v. Carey, 395 F.3d 1099, 1102-03 (9th Cir. 2005). Id. See Vernon v. City of Los Angeles, 27 F.3d 1385, 1391 (9th Cir. 1994) (noting that "a federal court interpreting state law is bound by the decisions of the highest state court").

1  reasonable doubt that petitioner committed the March 31, 2005 crimes in association with a gang,

2  and acted with the specific intent to promote, further or assist criminal conduct by gang members.

3        The first prong of § 186.22(b)(1) is satisfied in that petitioner committed the crime for

4  benefit of, at the direction of, or in association with a gang.  The gang expert in this case testified

5  that petitioner was identified as being a member of Del Paso Heights Bloods ("DPH") because he

6  was overheard by an officer telling a victim in a prior situation, "I gang bang," and "I will go to

7  jail for murder."  (RT. 628.)  His girlfriend had also told officers in the past that petitioner

8  "claimed THV[6] and DPH, that he wore a lot of red, and that he used the word blood a lot when

9  they spoke in his conversations," all of which indicate gang affiliation.  (Id. at 629-30.)  The

10  expert also identified a photograph of petitioner using a gang sign.  (Id. at 631.)

11        There was also sufficient evidence at trial to support the second prong that the crime was

12  committed to promote, further or assist any criminal conduct by gang members.  The gang expert

13  testified as follows in regard to the March 31, 2005 shooting which is the subject of the gang

14  enhancements to counts 7 and 8.

> Q  Let me ask you another hypothetical.  Let me ask you to assume on March 31st of 2005, two young ladies were fighting at the Glenwood Elementary School.
>
> That during the fight at the Glenwood Elementary School, one of the young girl's relatives attempted to break that fight up.
>
> Let me further ask you to assume that during that period of time Roy Houston was attempting to videotape that fight.
>
> That after the fight got broken up, words were exchanged between Mr. Houston and some of the other girls' family members.  Those family members retreated to a vehicle at which point in time Mr. Houston removed a gun and began shooting at that vehicle, shooting and striking it once on the passenger side.
>
> That after that incident, Mr. Houston went to his friend Mr. Lutin's residence where he told Mr. Lutin that he thought the other guy was a Crip from Texas.
>
> Given those facts, would you have an opinion whether or not that was a gang-related shooting?

---

[6]  According to the expert, THV is a subset of the DPH gang and includes gang members who live in the housing complex called Townhouse Villages.  They call themselves Townhouse Villains or THV.  (RT. 628.)

17

> A  Based on the information, it possibly could be if he believed the guy was a Crip from Texas.  And if Mr. Houston was trying to videotape this fight, and he believed this Crip was trying to take one of the females away so he couldn't videotape the fight, it could be seen as a sign of disrespect from Mr. Houston, where I want to tape this, and now you are not letting me.  You're disrespecting me.  For him to fire on that guy based on that situation, I would believe that would be a gang-related crime.
>
> Q  Is the mere act of somebody not listening to him and somebody not following his direction to get away and let the fight continue, that kind of not listening, is that act alone disrespectful enough to cause a shooting in this gang lifestyle?
>
> A  Yes, it could be.
>
> Q  And then if you were to add to that the fact that, as you indicated, there was some evidence that he believed to be a Crip, being a rival gang member, that kind of disrespect from a rival gang member, would that not in that culture call from some type of action?
>
> A  Yes, it would.
>
> Q  Violent action?
>
> A  That is correct.

(RT 638-39.)  Although on cross-examination the expert admitted that he paused at the hypothetical and said it was "possibly" gang related, and he was not as sure about the March 31st hypothetical as he was about the hypotheticals concerning the other dates, (tr. 639-40), the jury considered this testimony and found based on all the evidence at trial that this crime was gang related.  This court must view the evidence in that light.

The expert also testified about disrespect as an important theme in the gang culture.  He stated:

> If you are disrespected by a rival gang member and you're around your peers, or even if you are not around your peers, you're expected to somehow challenge that act of disrespect.  And it's normally by committing some kind of violence against that rival gang member for disrespecting you.  If you don't retaliate based on that act of disrespect, then you're going to be seen as weak within the image of your own gang.

(RT. 625.)  The fact that Kenneth Bell, a Crips gang member, was preventing petitioner from videotaping the fight by intervening to pull his cousin out of the fight, could be construed as disrespect to petitioner, who wanted the fight to continue so that he could videotape it, especially

18

after petitioner had told him, "home boy, you not doing nothing." (TR. 468.)

Furthermore, Mr. Lutin separately testified that petitioner went to Lutin's house after the shooting on March 31st, and told Lutin that he had been in an altercation with some Crips from Texas. (RT. 352.) This evidence supports the jury's finding that gang enhancements should apply to counts 7 and 8 for the March 31, 2005 crimes. The state courts' denial of habeas relief with respect to petitioner's insufficient evidence claim is not an objectively unreasonable application of Jackson and Winship to the facts of the case. Accordingly, petitioner is not entitled to federal habeas relief with respect to this claim.

Based on the state court record in this case, AEDPA requires the undersigned to uphold the state court determinations as they were not AEDPA unreasonable.

CONCLUSION

For all of the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file

/////

/////

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 22, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/Hous2306.hc